Stanard, J.
The appellee by his original bill against the personal representative of Moses Mann, sought satisfaction of a judgment obtained by his intestate against Moses Mann as executor of Andrew Hamilton, out of the personal assets of Mann's estate; and by his amended bill, he made the devisees of Mann (who were bis children, and, in part, his heirs) defendants, and sought satisfaction of his claim out of the real estate devised to them, in the event that he should fail to get it out of the personal. All the defendants relied on the 17th section of the statute of limitations as a bar to the plaintiff’s claim; and the devisees further insisted, that the debt could not be charged on the lands devised. I am of opinion, that neither of these defences is sustainable.
Five years did not elapse, from October 1S23, when administration of Moses Mann's estate with his will annexed was granted to Lewis Mann, to the institution of this suit in March 1828; and consequently, if the administration granted to Le Grand and others in 1822, upon the supposition of an intestacy, had not been granted, there would have been no pretext for applying the limitation in question in bar of this suit. A case for the effectual application of that provision of the statute, can be made only by coupling the two grants of admi *104 nistration together, and thus, in respect to this matter, . . , r- , . , giving efficacy to the first, so as to make it the terminus from which the statute should begin to run. This, I think, is inadmissible. The grant of administration as upon an intestacy, when a will exists, though that will be not ostensible, is void for every purpose, except perhaps the single one of protecting a debtor of the decedent in the payment of a debt to such administrator while the will remains concealed or unknown. 1 Wms. on Ex’ors, 369. fyseq. Against him the creditor could have no effectual remedy., nor could he, if he had initiated proceedings against him, have pursued them to judgment against the rightful administrator. To allow the rightful administrator to use the void grant to eke out his defence, would be to unite the invalid to the valid, and draw succour to a right the existence of which infers the nullity of that from which succour is sought. The statute requires proceedings to be commenced within five years from the qualification of the executor or administrator: is it for the defendant to say that there was such a qualification, and to use for his protection a proceeding which was in derogation of his rights, and the nullity of which results from those rights?
It is, moreover, the decided inclination of my mind, that this provision of the statute of limitations is not available in bar of a claim on a judgment against a testator or intestate in autre droit. But as it is unnecessary to decide this point in the present case, I forbear to express any final opinion upon it, or to enter into the reasoning which has given to my mind the inclination now avowed.
The charge of the debt due to Flinris administrator on the lands derived by the defendants from Moses Mann, is made under his executorial bond by which his heirs are bound: and the objection is, that the defendants are devisees, and as such are not chargeable, under the statute against fraudulent devises, on any obligations of *105 the testator other than those which evidence some certain debt, and especially not on obligations on which the claimant must sue in the name of others and is a party as relator only.
As to the first branch of the objection, it is to be remarked, that it is not urged against the remedy in equity to which the appellee has resorted; for that would be an objection not to the right but to the mode in which it is sought to be enforced. Jf the right exists, I have no doubt the appellee has the remedy in equity he has resorted to. The objection is, that his claim is not within the protection of the statute, and he could not have maintained an action at law for it against the devisees. In the present case, as the parties are heirs as well as devisees, this objection might perhaps be turned aside by the appellee, by considering the defendants as having succeeded as heirs to the lands proposed to be charged, to the extent of the interest they would have taken as heirs had there been an intestacy, and regarding them as holding the lands, to that extent, by their better title as heirs. But dismissing that inquiry, and treating them as devisees, my opinion is, that the objection to the liability of the lands devised to the appellee’s claim is untenable. The application of the strictest principles of construction to the statute against fraudulent devises results in this—that as the statute gives the remedy by action of debt against the devisee, he and the lands devised are liable only for such claims as can be asserted and recovered by an action of debt. Wilson v. Knubley, 7 East 128. Now, the claim of the appellee is within the letter of the restriction resulting from this construction. At the death of Moses Mann, the right of Flinn's administrator to assert his claim by action of debt on Mann's executorial bond, was consummated. The debt too was ascertained; and though in such a suit Mann perhaps might have shewn that he was entitled to exoneration in whole or in part, the possibility of *106 such defence rendered the extent of his liability not more uncertain than it would have been, if the claim to exoneration had been founded on disputed set-offs to a bond for his own debt and for a sum certain ; and if ciajm wag on a bond with collateral condition, and the amount as well as the extent of the responsibility was unliquidated, yet it would be within the letter and strict construction of the statute, and chargeable on the devisees and land devised.
The other branch of the objection, namely, that the action at law, had one been brought, must have been brought in the name of the justices, and the claimant would only have been a relator, is, I think, equally unavailable. The only difficulty in bringing a claim asserted on such a security within the letter of the statute, would arise when a second claimant should, after a judgment rendered in favour of the first, seek his remedy : that remedy would be a scire facias on the judgment rendered in the suit of the first claimant; and so, it is supposed, it would be liable to the objection arising from the technical and literal construction by which the operation of the statute against fraudulent devises has been limited. But the objection would not be applicable to the case: for the first action on the bond is not only for the benefit of the relator in that suit, but for all others to whom the security enures, and those that come in after the judgment in the action of debt prosecuted for the behoof of all, may with strict propriety be regarded not only as having had a right to an action of debt, but as having used that remedy.
As to the accounts, I think the amount of the appraised value of the specific legacies, and interest thereon, were assets of Hamilton’s estate in the hands of Moses Mann his executor, chargeable with the appellee’s claim; and that the payments made on the decrees in favour of Mitchell’s administrator in 1821, and of Meze in 1828, cannot be allowed as credits to reduce *107 the assets chargeable with the appellee’s claim. For judgment had been rendered in favour of Flinn the appellee’s intestate, as early as 1813, which charged the assets then in the hands of Moses Mann or for which he was then accountable. If this charge could be dislodged by a subsequent judgment or decree, it must have been a subsequent judgment or decree rendered for a claim of higher dignity than Flinn’s, and Mann must have had notice of that claim before the rendition of Flinn’s judgment.. But such superior dignity and notice are not shewn, and not even alleged. Nothing appears in the case to authorize the court to put the appellee on the pursuit of the specific legatees of Hamilton, for the protection of the executor Mann and his representatives. Prima facie, the creditor is under no obligation to make such pursuit. Were it conceded that peculiar circumstances might exist, from which an equity in favour of an executor might arise to cast this duty on a creditor, yet thát equity should be asserted, and the circumstances suggested in the progress of the cause, in order to enable the creditor to have the circumstances investigated, with a view to relieve him from the duty of pursuing the legatees, by shewing that their removal or insolvency, or other circumstances, would render the pursuit fruitless or in the highest degree inconvenient. The pleadings in this case assert no such equity, suggest no such circumstances. The length of time which has elapsed during the prosecution of the appellee’s claim (the only circumstance relied on to put the appellee on that pursuit, and apparently urged for the first time in the argument before the appellate court) is unavailing to sustain the pretension. The lapse of time affords a presumption that the pursuit would have been fruitless, and had it been urged in the progress of the cause in the court below, that presumption might have been corroborated by proof.
*108 The imputation of error in the decree, for directing the amount of the appellee’s claim to be raised by a sale of the lands, instead of apptying the money which had been paid into court towards the satisfaction of it, ancj raisjng residue out of the rents and profits, is in part unfounded. The fund subject to the order of the court is applied in the way suggested, unless the appellants should prevent it by withholding their consent to such application ; and of this they have no right to complain. Without questioning the principles on which Tennent's heirs v. Patton was decided, I do not think the decree in this case should be reversed, because it directs the debt to be raised by a sale of the lands. In that case, the decree was final, in this case it is interlocutory: there infants were concerned, here the devisees are adults: there, no opportunity existed at the time the appellate remedy was sought, to bring the subject to the notice of the court below, and get redress for an error on a point’nol before brought under its notice; here, such opportunity did exist: there, the infants could not waive or renounce any right or privilege ; here, the adults had full capacity to do so. According to the principles of the case of Tennent’s heirs v. Patton, the heir or devisee has the right or privilege to have the debt raised out of the rents and profits, if it can be done in a reasonable time ; but if adults, they may surely waive this privilege, and find it to their advantage to have the amount raised by a sale of the land, rather than subject themselves to the charge of a receiver, the inconvenience of renting out and tenanting the whole land, and the sequestration of all the profits. It seems from the record in this case, that the whole controversy in the court below related to the existence of the claim, and the liability of the lands devised to be charged with it: there was no controversy about the manner of raising the money out of the lands. If it does not appear that the defendants were *109 apprized of their right to have it raised out of the rents and profits, yet it is by no means certain, that, if they had been apprized of it, they wogld have preferred that n}ode of raising it to the mode adopted by the decree. Had that right been known and urged, it might not have been resisted. If the decree had been moulded by the principles of the case of Tennent's heirs v. Patton, and the indubitable doctrine applicable to the proceeds of the sale made by the defendants of part of the land, (which were subject to the control of the court below), the decree would have directed the application of those proceeds, unconditionally, to the part satisfaction of the debt, and provided for the satisfaction of the balance out of the rents and profits; and it is by no means clear that the defendants would have preferred such a decree to the decree which was pronounced.
It is beneficial to the administration of justice, and will tend to discourage litigation, that this court should cherish a course of practice whereof numerous examples are furnished by its decisions, which refrains from reversing a decree or judgment on points not foreseen or contested in the court below, when the party might have had the benefit of them there if he had there suggested them, and when the opportunity of making the suggestion in the court below, and getting the benefit of it there, still remained at the time he sought his appellate remedy; especially, when the point arises out of the exercise of a privilege of such party, when it is doubtful, whether or no he would have exercised the privilege- if he had been fully apprized of it, and when a reversal is not necessary to enable this court to save the full benefit of that privilege to him. Such is this case in all respects : it is plain, that there was no controversy between the parties as to the manner of raising the money; that the decree being interlocutory, the appellants had full opportunity to apply for a modification of it before the sale could take place under it, if *110 they preferred a decree so modified to the one which , , . . , . was rendered; that it is nowise apparent that they would have preferred, or will now prefer, such a modification of the decree; and that if they have such a preference) this court may give them the benefit of it without reversing the decree. The benefit of such preference may be saved to them, by reserving to the court below, the power which it possessed at the time the appeal to this court was allowed, of so modifying the decree, as to direct the unconditional application of the money under the control of the court, to the partial satisfaction of the appellee’s claim, and to provide for the payment of the balance out of the rents and profits of the lands devised, which by the decree as it now stands are subjected to sale, provided such a modification of the decree shall be asked by the appellants or by the appellee before the sale takes place, and provided the rents and profits will discharge the debt in a reasonable time.
I am therefore of opinion, that the decree should be affirmed with costs, and the cause remanded, with directions to the court of chancery to make such á modification of the decree as I have suggested, if it be asked in due time by either party, and if the balance of the debt may be satisfied out of the rents and profits within a reasonable time.
Parker, J. concurred.